United States District Court
Southern District of Texas
**ENTERED**
January 22, 2021
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| Annette G. Reid, | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action H-19-4302 |
| | § | |
| Andrew M. Saul, | § | |
| Commissioner of the Social | § | |
| Security Administration, | § | |
| *Defendant*. | § | |

# MEMORANDUM AND RECOMMENDATION

Annette G. Reid appeals the Social Security Administration (SSA) Commissioner's final decision denying her application for social security benefits. (D.E. 1.) This case was referred to the magistrate judge for findings and recommendation pursuant to 28 U.S.C. § 636(b)(1). Pending before the court is Plaintiff's Motion for Summary Judgment (D.E. 11) and Defendant's Motion for Summary Judgment. (D.E. 12.) Having considered the motions, filings, and applicable law, the court recommends that the final decision of the Commissioner be affirmed.

1. **Procedural Posture**

Reid applied for disability insurance benefits and supplemental security income on June 1, 2016. (Tr. 234, 236.) Reid claimed that she became disabled on March 4, 2016, due to bipolar disorder with psychotic features, fibromyalgia,

learning disabilities, post-concussion syndrome, and constant pain from cervical and lumbar herniations. (Tr. 78–79, 94–95, 234, 236.) Reid was born in 1957. (Tr. 234, 236.)

Reid worked as a longshoreman clerk with various companies for thirty-eight years prior to the alleged disability onset date. (Tr. 47–48, 347.) The Social Security Administration denied Reid's applications on July 15, 2016. (Tr. 78–111.) Reid sought reconsideration on September 17, 2016. (Tr. 173–74.) The applications were again denied on November 16, 2016. (Tr. 112–51.) Reid requested a hearing on January 11, 2017. (Tr. 183–84.)

Administrative Law Judge (ALJ) Kelly Matthews held a hearing on June 12, 2018, in Houston, Texas. (Tr. 39–77.) The ALJ issued a decision on August 29, 2018, finding that Reid was not disabled. (Tr. 17–30.) The Appeals Council denied Reid's request for review on June 19, 2019. (Tr. 1–5.) Reid timely filed a complaint in federal court to appeal the SSA's final decision when she filed a motion to proceed in forma pauperis on August 16, 2019. (D.E. 3 at 1.) The SSA approved a later-filed application, finding Reid disabled as of August 30, 2018, the day after the date of the ALJ's decision. (D.E. 11 at 3.) Thus, the issue in this case is whether Reid was disabled before August 30, 2018.

## 2. Legal Standards

### A. Five–Step Process

The Social Security Act provides disability insurance benefits to individuals with physical and mental disabilities who have contributed to the program and provides supplemental security income to individuals with physical and mental disabilities who have limited income and resources. *See* 42 U.S.C. §§ 423, 1382. For both types of benefits, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A).

The Commissioner uses a sequential, five-step approach to determine whether the claimant is disabled. *See Schofield v. Saul*, 950 F.3d 315, 317 (5th Cir. 2020). The claimant bears the burden of proof on the first four steps, but the Commissioner bears the burden on the fifth step. *See Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000). A finding that the claimant is disabled or not disabled at any point in the five-step review terminates the analysis. 20 C.F.R. § 404.1520(a)(4) (2016); 20 C.F.R. § 416.920(a)(4) (2016).

At step one, the ALJ must determine whether the claimant is involved in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i) (2016); 20 C.F.R. § 416.920(a)(4)(i) (2016). A person engaged in substantial gainful activity is not

3

disabled, regardless of her medical condition, age, education, or work experience. 20 C.F.R. § 404.1520(b) (2016); 20 C.F.R. § 416.920(b) (2016).

At step two, the ALJ determines whether any of the claimant's impairments is severe. 20 C.F.R. § 404.1520(a)(4)(ii) (2016); 20 C.F.R. § 416.920(a)(4)(ii) (2016). An impairment is not severe "only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018) (emphasis omitted) (quoting *Loza v. Apfel*, 219 F.3d 378, 391 (5th Cir. 2000)). A person who does not have a severe impairment is not disabled. *Schofield*, 950 F.3d at 318 (citing 20 C.F.R. § 404.1520(c)); *see also* 20 C.F.R. § 416.920(c) (2016).

The ALJ next determines, at step three, if any of the claimant's severe impairments meets or equals a listed impairment in appendix 1 (Listing). 20 C.F.R. § 404.1520(a)(4)(iii) (2016); 20 C.F.R. § 416.920(a)(4)(iii) (2016); *see also* 20 C.F.R. Part 404, Subpart P, Appendix 1 (2016). If all the criteria of a Listing are met or equaled, the claimant is considered disabled. 20 C.F.R. § 404.1520(d) (2016); 20 C.F.R. § 416.920(d) (2016).

Before reaching the final two steps, the ALJ must assess the claimant's residual functional capacity (RFC) "based on all the relevant medical and other evidence in [the] case record." 20 C.F.R. § 404.1520(e) (2016); 20 C.F.R. §

416.920(e) (2016); *see also Perez v. Barnhart*, 415 F.3d 457, 461–62 (5th Cir. 2005) (citing 20 C.F.R. § 404.1545(a)(1)). An RFC assessment is a determination of the most a claimant can still do despite all physical and mental impairments. *Perez*, 415 F.3d at 461–62 (citing 20 C.F.R. § 404.1545(a)(1)); *see also* 20 C.F.R. § 416.945(a)(1) (2016).

At step four, the RFC is used to determine whether the claimant can perform past relevant work. *Perez*, 415 F.3d at 462. If the claimant can perform past work, the claimant is not disabled. *See Schofield*, 950 F.3d at 318 (citing 20 C.F.R. § 404.1520(f)); *see also* 20 C.F.R. § 416.920(f) (2016). If not, the ALJ proceeds to step five. 20 C.F.R. § 404.1520(g)(1) (2016); 20 C.F.R. § 416.920(g)(1) (2016).

At step five, the ALJ determines whether the claimant can perform any other work by considering the claimant's RFC and other factors, including age, education, and past work experience. *Schofield*, 950 F.3d at 318 (quoting 20 C.F.R. § 404.1520(a)(4)(v)); *see also* 20 C.F.R. § 404.1520(g)(1) (2016); 20 C.F.R. § 416.920(g)(1) (2016). If the claimant can perform other work available in the national economy, the claimant is not disabled. *Schofield*, 950 F.3d at 318 (citing 20 C.F.R. § 404.1520(g)); *see also* 20 C.F.R. § 416.920(g) (2016).

### B. Substantial Evidence Standard of Review

This court's "review of the ALJ's disability determination is 'highly deferential': [it] ask[s] only whether substantial evidence supports the decision and

whether the correct legal standards were employed." *Garcia v. Berryhill*, 880 F.3d 700, 704 (5th Cir. 2018) (citations omitted). "A decision is supported by substantial evidence if credible evidentiary choices or medical findings support the decision." *Salmond*, 892 F.3d at 817 (internal quotation marks omitted) (quoting *Whitehead v. Colvin*, 820 F.3d 776, 779 (5th Cir. 2016)). "Substantial evidence is more than a mere scintilla but less than a preponderance." *Id.* (internal quotation marks omitted) (quoting *Williams v. Admin. Rev. Bd.*, 376 F.3d 471, 476 (5th Cir. 2004)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). The reviewing court must examine the record as a whole to determine whether substantial evidence supports the ALJ's decision. *Randall v. Sullivan*, 956 F.2d 105, 109 (5th Cir. 1992).

### 3. Hearing

At the hearing on June 12, 2018, the ALJ heard testimony from Reid, one of her friends, and a vocational expert (VE). (Tr. 47–76.)

Reid testified about her work history and her mental and physical problems. (Tr. 47–51, 53–60.) Reid testified that, during her career, she had worked as a chief longshoreman clerk with managerial responsibilities but spent the last few years of employment in the less demanding role of longshoreman clerk. (Tr. 49.) In

paperwork submitted prior to the hearing, Reid described her job duties as a longshoreman clerk to include documenting and coordinating containerized cargo on and off ships, driving a small truck around heavy machinery, directing cargo traffic, and using a hand-held computer and a multi-channel walkie talkie. (Tr. 347.) At the hearing, she described the job as "facilitat[ing] the loading and unloading of cargo" and including work with inventories, timekeepers, weighers, surveyors of equipment, and longshoremen. (Tr. 48.)

Reid testified that, for the last few months of working, she experienced manic symptoms at work:

> Sometimes I would think that if a crane down [sic] . . . I ha[d] the power to fix that crane if I drove around it a certain amount of times. They would have to come and get me and take me in the office . . . and had to get me replaced. . . . Another time, I was hearing things on the radio and when I'm that way, I feel like . . . I can read minds."

(Tr. 54.) Reid testified that she was terminated on March 3, 2016, the day on which she was involved in an accident on the job. (Tr. 47–51.)

Reid testified that she had experienced "mania and psychosis" since the age of twenty-eight and had been prescribed many different antipsychotic medications over time. (Tr. 55.) She testified that every day she awoke depressed but would become manic and, almost every day, experienced anxiety and agitation. (Tr. 55–56, 58.) She also testified that, to avoid hospitalization, she had temporarily moved in with her friend, Susan Michael, on six occasions in the prior two years. (Tr. 56–57.)

7

Michael testified that Reid temporarily relocated when she began experiencing racing thoughts, delusions, and hallucinations and remained in Michael's home on average for two weeks until increased medication resolved the psychosis. (Tr. 63–64.) Michael testified that she and Reid devised this plan with Reid's psychiatrist in 2014, during "a really bad episode" when Reid moved in with Michael for a year and a half. (Tr. 67–68.) Michael testified that, prior to Reid's alleged onset date, she had been hospitalized several times for long periods and had been unable to work for up to a year or more. (Tr. 70.)

The VE testified that the Dictionary of Occupational Titles (DOT) did not include an exact match for Reid's prior work. (Tr. 71.) The VE testified that, based on the record and Reid's description, her prior jobs as longshoreman clerk and longshoreman clerk supervisor would be performed at a light exertion level and defined as semi-skilled work. (Tr. 71–72.) The ALJ asked the VE what work someone with Reid's educational background and age could do if they had the RFC to work at the light exertional level with these limitations:

> She can understand, remember[,] and carry out detailed but not complex instructions, make decisions, concentrate for extended periods, interact with others[,] and respond to changes[] but can only recall at a [span] of two-step commands[;] therefore, we would be looking for semi-skilled work under that hypothetical.

(Tr. 72.) The VE testified that such an individual could perform Reid's past relevant work. *Id.* The VE testified that such an individual could not perform Reid's past

8

relevant work if they were also limited to understanding, remembering, and carrying out simple instructions with only occasional interaction with the public. *Id.*

Reid's attorney posed two questions to the VE based on opinion testimony regarding Reid's mental functioning offered by Adriana M. Strutt, Ph.D., an examining neuropsychologist. (Tr. 73–76.) The VE testified that the limitations presented in each of those profiles would prohibit such an individual from performing any job. *Id.*

The ALJ issued her decision on August 29, 2018, finding that Reid was not disabled. (Tr. 17–30.)

### 4. Analysis of the ALJ's Determination

#### A. Step One

At step one, the ALJ correctly found that Reid had not engaged in substantial gainful activity since the alleged disability onset date of March 4, 2016. (Tr. 20.)

#### B. Step Two

At step two, the ALJ found that Reid had the following severe impairments: chronic pain from cervical and lumbar degenerative disc disease and bipolar disorder. (Tr. 20.) The ALJ found medial meniscal tear, shoulder tear, post-concussion syndrome, and obesity to be non-severe impairments and found that multiple sclerosis and fibromyalgia were not medically determinable. *Id.*

The court's review of the record confirms that the ALJ's step-two findings are supported by substantial evidence. Reid does not dispute the step-two findings.

### C. Step Three

At step three, the ALJ found that Reid's impairments or combination of impairments did not meet or medically equal the severity of an impairment defined in the Listing. (Tr. 21.) The ALJ appropriately considered Listing sections 1.04 (disorders of the spine) and 12.04 (affective disorders). (Tr. 21–22.)

The court's independent review of the record shows that substantial evidence supports the ALJ's step-three findings. Reid does not dispute the step-three findings.

### D. RFC

Before turning to the final two steps of the analysis, the ALJ determined that Reid had the RFC:

> to perform light work as defined in 20 CFR [§§] 404.1567(b) and 416.967(b) except she is able to understand, remember and carry out detailed but not complex instructions, make decisions, concentrate for extended periods, interact with others[,] and respond to changes but she can only recall at a span of two step-commands and therefore would be limited to semi-skilled work.

(Tr. 22.) The ALJ relied on objective medical evidence and the hearing testimony in reaching this finding. (Tr. 22–29.)

Reid argues that the ALJ's RFC determination is not supported by substantial evidence because: (1) Reid's hearing testimony about psychotic episodes at work contradict the ALJ's findings of moderate limitations in the areas of understanding, remembering, or applying information and concentrating, persisting, or maintaining

10

pace; and (2) the ALJ's RFC determination is not consistent with her findings of moderate limitations in those areas. (D.E. 11 at 6–7, 9.)

The ALJ's RFC determination must include "a narrative discussion describing how the evidence supports each conclusion" and cite specific medical and nonmedical evidence. SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996). The ALJ also must discuss "the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis[,] . . . describe the maximum amount of each work-related activity the individual can perform . . . . [and] explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id.* The RFC determination is an issue reserved to the Commissioner. 20 C.F.R. § 404.1527(d)(2) (2016); 20 C.F.R. § 416.927(d)(2) (2016); *Taylor v. Astrue,* 706 F.3d 600, 602–03 (5th Cir. 2012).

In the discussion of Listing 12.04 at step three, the ALJ addressed Reid's limitations in the four areas of mental functioning, which are evaluated to determine the overall degree that a mental disorder interferes with the claimant's ability to function in a work setting. (Tr. 21–22.) The ALJ found Reid to have mild limitations[1] in the areas of interacting with others and adapting or managing oneself. *Id.*

---

[1] The regulations define mild limitation as "functioning in this area independently, appropriately, effectively, and on a sustained basis is slightly limited." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(F)(2)(b) (2018).

As to understanding, remembering, or applying information, the ALJ addressed Reid's self-reported difficulties with memory and following instructions. (Tr. 21.) The ALJ found that the record evidence showed that Reid's memory was intact and that she had good comprehension of instructions. *Id.* The ALJ also observed that, at the hearing, Reid was "able to recall background information, especially employment and medical history." *Id.* As for concentrating, persisting, or maintaining pace, the ALJ addressed Reid's self-reported difficulties with maintaining attention and completing tasks. (Tr. 22.) The ALJ found that the record evidence showed that Reid's concentration was intact and that she was not very distractible. *Id.* The ALJ concluded that Reid's limitation in each area was moderate.[2] (Tr. 21–22.)

Reid argues that, based on her description of psychotic episodes at work, the ALJ should have found that Reid had marked limitations[3] in the areas of understanding, remembering, or applying information and concentrating, persisting, or maintaining pace. (D.E. 11 at 7.) *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00F(d) (2016) (defining "marked limitation"). The ALJ acknowledged Reid's

---

[2] The regulations define moderate limitation as "functioning in this area independently, appropriately, effectively, and on a sustained basis is fair." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(F)(2)(c) (2018)

[3] The regulations define marked limitation as "functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(F)(2)(d) (2018)

12

reports of delusional thoughts but found her allegations of a disabling effect to be inconsistent with her treating psychiatrist's notes, which did not reflect that Reid reported any significant periods of mania and stated that her bipolar disorder was in remission. (Tr. 29.)

The ALJ incorporated the findings of moderate limitations in two of the four areas of functioning in the RFC by including limitations on understanding, remembering, and carrying out instructions and following commands. (Tr. 22.) The ALJ's narrative on Reid's RFC is a detailed discussion of Reid's subjective reports and daily activities, the hearing testimony, Reid's treatment for bipolar disorder and physical impairments, and medical opinion testimony of examining and consulting doctors. (Tr. 22–29.) The ALJ resolved inconsistencies in the record, finding the opinions of examining psychologists to be inconsistent with Reid's treating psychiatrist's monthly notes. (Tr. 25–28.) The ALJ has the responsibility of deciding conflicts in the evidence, and the court must affirm findings of fact that, as here, are supported by substantial record evidence. *See Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).

Reid argues that "an individual with 'moderate' limitations in ability to concentrate is quite unable to 'concentrate for extended periods.'" (D.E. 11 at 9.) The argument misconstrues the ALJ's findings. The ALJ found that Reid was not very distractible and her concentration was intact, despite difficulty in maintaining

13

attention and completing tasks. (Tr. 22.) These findings support the ALJ's conclusion that Reid's ability to concentrate in a work setting was fair. The court finds no inconsistency between the ALJ's findings on the degree of Reid's mental limitations and the RFC.

The court's independent review of the record finds that substantial evidence supports the ALJ's RFC findings. (Tr. 469–72, 581, 787–88, 790, 792–93, 1302–09, 1311, 1313–14.)

**E. Step Four**

At step four, the ALJ found that Reid could perform her past relevant work as a longshoreman clerk based on the VE's hearing testimony. (Tr. 29.) The VE testified that, based on Reid's descriptions of her prior work, an individual with Reid's limitations could perform the job of longshoreman clerk. (Tr. 72.)

Reid argues that the ALJ's step-four determination is erroneous because the ALJ failed to "fully delineate the demands" of Reid's prior work in the decision. (D.E. 11 at 14.)

At step four, the ALJ determines whether the claimant can perform her past relevant work by comparing the RFC determination with the demands of the claimant's past relevant work. 20 C.F.R. § 404.1520(f) (2016); 20 C.F.R. § 416.920(f) (2016). The regulations instruct the ALJ to ask the claimant for information about the work performed in the past but also allow the ALJ to rely on

information provided by a VE. 20 C.F.R. § 404.1560(b)(2) (2016); 20 C.F.R. § 416.960(b)(2) (2016). VEs are "familiar with the specific requirements of a particular occupation, including working conditions and attributes and skills needed." *Carey*, 230 F.3d at 145 (quoting *Fields v. Bowen*, 805 F.2d 1168, 1170 (1986)).

The ALJ did precisely what the regulations require. The written record included Reid's description of her duties, which the VE considered. (Tr. 347.) The VE was in attendance at the hearing, during which the ALJ asked Reid to describe her past work. (Tr. 39, 48.) The VE determined, based on training and experience as well as the record evidence and the hearing testimony, that Reid's past work would be performed at the light exertional level and was semi-skilled work. (Tr. 71–72.) The ALJ is not required to articulate in the decision the demands of Reid's past relevant work. *See* 20 C.F.R. § 404.1560(b) (2016) (requiring only a comparison, not a discussion, of the demands of past relevant work); *see also* 20 C.F.R. § 416.960(b) (2016) (same). The ALJ committed no error.

Reid also argues that the ALJ's determination is not supported by substantial evidence because her past relevant work could not be performed by someone with the limitations in Reid's RFC. (D.E. 11 at 8–9.) Relatedly, she also complains that the ALJ's hypothetical question to the VE was defective.

A VE's response to an ALJ's hypothetical question is not defective and provides substantial evidence to support the ALJ's step-four findings if the question posed "incorporates reasonably all disabilities of the claimant recognized by the ALJ" and the claimant or her representative "is afforded the opportunity to correct deficiencies in the hypothetical." *Hardman v. Colvin*, 820 F.3d 142, 148 (5th Cir. 2016) (quoting *Bellow v. Chater*, 66 F.3d 323, 1995 WL 534955, at *1 (5th Cir. Aug. 16, 1995)); s*ee also Masterson v. Barnhart*, 309 F.3d 267, 273–74 (5th Cir. 2002) (finding that the VE's properly solicited testimony was substantial evidence). The burden is on the claimant to demonstrate that she cannot perform her past relevant work. *Brown v. Astrue*, 344 F. App'x 16, 19 (5th Cir. 2009).

The ALJ asked the VE whether a hypothetical individual with all the limitations ultimately adopted by the ALJ in the RFC could perform work as a longshoreman clerk. (Tr. 72.) The VE answered in the affirmative. *Id.* As discussed, the RFC is supported by the evidence. Reid's attorney was given the opportunity to correct deficiencies in the hypothetical question. Because the VE responded that an individual with Reid's RFC could perform Reid's prior work, the ALJ's determination is supported by substantial evidence. *Masterson*, 309 F.3d at 273–74 (holding that the ALJ properly relied on the VE's testimony because the ALJ "scrupulously incorporated" all the limitations "supported by the evidence and recognized by the ALJ" and gave an opportunity for cross-examination).

Reid argues, without citing any authority, that the ALJ's limitation to two-step commands prohibits Reid from performing a semi-skilled position. (D.E. 11 at 10.) The VE classified Reid's prior work as semi-skilled and, in response to the ALJ's hypothetical question that included a limitation to two-step commands, stated that such a hypothetical individual could perform Reid's prior work.

Reid further argues that the ALJ did not include any limitations in the hypothetical presented to the VE that relate to bipolar disorder and that bipolar disorder would cause her to be off task twenty percent of the workday and absent three workdays a month. (D.E. 11 at 9–10.) As to the former, the ALJ did incorporate limitations related to Reid's mental impairments, including that she could understand, remember, and carry out detailed but not complex instructions and that she could only recall at a span of two-step commands. As to the latter, Reid fails to point to any evidence that she would be off task or absent as much as she alleges.

Finding Reid not disabled at step four, the ALJ did not reach step five. *See* 20 C.F.R. § 404.1520(a)(4) (2016) (stating that a finding of not disabled or disabled at any step ends the analysis); *see also* 20 C.F.R. § 416.920(a)(4) (2016) (same).

The court's review of the administrative record reveals that the ALJ employed the correct legal rules and that her findings at each of the sequential steps were supported by substantial evidence.

## 5. Conclusion

The ALJ's decision denying social security benefits is supported by substantial evidence and is consistent with the law. There is no genuine issue of material fact, and summary judgment is appropriate. Fed. R. Civ. P. 56(a), (c). Accordingly, the court recommends that Plaintiff's motion for summary judgment be **DENIED** and Defendant's cross-motion for summary judgment be **GRANTED**.

The parties have fourteen days from service of this Memorandum and Recommendation to file written objections. 28 U.S.C. § 636(b)(1)(c); Fed. R. Civ. P. 72. Failure to timely file objections will preclude appellate review of factual findings or legal conclusions, except for plain error. *See Thomas v. Arn*, 474 U.S. 140, 147–49 (1985); *see also Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988).

Signed at Houston, Texas on January  22  , 2021.

_____
Peter Bray
United States Magistrate Judge